IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUSTIN WATERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24 C 10918 |
| | ) |
| PATSON, INC., d/b/a | ) |
| TRANSCHICAGO TRUCK GROUP, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dustin Waters was employed as a truck sales consultant by Patson, Inc. (doing business as TransChicago) from 2016 to 2024. He alleges that TransChicago failed to pay him commissions that he was owed after his termination. Waters has asserted claims for breach of contract and for violations of the Illinois Sales Representative Act (ISRA), 820 Ill. Comp. Stat. Ann. 120/2, and the Illinois Wage Payment and Collection Act (IWPCA), *id.* 115/1–20. TransChicago has moved for summary judgment on all three claims, and Waters has filed a cross-motion for summary judgment. For the reasons below, the Court grants summary judgment in favor of TransChicago.

### Background

The following facts are undisputed unless otherwise noted. TransChicago sells trucks and other vehicles. It employed Waters as a truck sales consultant from December 2016 to late February 2024. Waters was an employee, not an independent contractor.

In 2016, Waters received an offer letter describing his salary and commission rates, including a 30% commission on all vehicles sold.  The letter stated that it was not a contract and that compensation would be reviewed periodically based on economic conditions and performance.  Waters signed and returned the letter as requested, indicating his acceptance of the job offer.

In 2018, TransChicago issued a commission policy stating that "[a] commission is not earned and paid to a vehicle sales person until the vehicle has been delivered and payment has been received in full by the customer."  Def.'s L.R. 56.1 Stmt., Ex. E.  The policy stated that if a vehicle was both delivered and paid for during a salesperson's tenure at TransChicago, the salesperson would receive 100% of the commission, in other words, the full 30%.  If the salesperson was no longer employed by TransChicago by the time a vehicle was delivered and paid for, the salesperson would receive 50% of the commission, in other words, 15%.

In early January 2024, TransChicago issued a new commission policy that defined an earned commission in the same manner as the 2018 policy but stated that a salesperson would not earn a commission if the salesperson's employment ended prior to delivery of and payment for the vehicle.  *See* Def.'s Mot. for Summ. J., Ex. F. TransChicago distributed the policy by email to all salespeople, including Waters, and about a week later, it discussed the policy at a meeting that Waters attended.  Waters concedes that he received the email—to which the new policy was attached—but contends that TransChicago did not explain sufficiently "how the policy would affect commission on pending transactions."  Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 20.  The policy itself, however, clearly states that to receive payment of a commission, the

2

salesperson must still be employed at the time of delivery and payment.

TransChicago terminated Waters's employment on or about February 27, 2024. Waters later filed the present case in state court, alleging that he was owed $441,000 in outstanding commissions. TransChicago removed the case to federal court. As best as the Court can determine—or, at least, as best as Waters has explained it—Waters's claim concerns a number of sales that he made to Indiana Upfitters and Viking Cives Midwest on which the orders were placed in or before February 2024 but the vehicles were not invoiced or delivered until after his termination. See Pl.'s Consol. Resp. to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ¶¶ 18, 33; see also id. ¶ 13 (citing two specific orders that, based on comparison with Def.'s Mot. for Summ. J., Ex. A-1, were placed by Indiana Upfitters).

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. Id.

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the "party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact."

*Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).  If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate.  *Celotex*, 477 U.S. at 323–24.

    A.    **Illinois Sales Representative Act**

Waters alleges that TransChicago violated the ISRA, which provides that "[a]ll commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due."  820 Ill. Comp. Stat. Ann. 120/2,  The ISRA states that a "sales representative" is "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include . . . one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act."  *Id.* 120/1(4).  The IWPCA defines "employee" as "any individual permitted to work by an employer in an occupation."  *Id.* 115/2.

TransChicago argues that the ISRA does not apply to Waters because it is undisputed that he was its employee.  Waters concedes that he was an employee of TransChicago and does not argue that he falls under one of the three enumerated exceptions to the definition of "employee" in the IWPCA.  No reasonable jury could find that Waters could succeed on his claim under the ISRA, so TransChicago is entitled to summary judgment on this claim.

    B.    **Breach of contract**

Waters asserts a claim for breach of contract.  To succeed on a breach of

4

contract claim, a plaintiff must prove "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28, 215 N.E.3d 871, 877.

Waters contends that the 2016 offer letter is a valid, enforceable contract that entitles him to a 30% commission on all vehicles sold and does not limit the payment of commissions after the end of his employment. TransChicago responds that the offer letter is not an enforceable contract and that Waters does not point to any other contract entitling him to post-employment commissions. TransChicago also contends that Waters has waived his argument on this claim, but Waters has sufficiently addressed each element of a breach of contract claim.

In Illinois, "[t]he question of the existence of a contract is a matter of law for determination by the court." *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 547 F.3d 882, 886–87 (7th Cir. 2008) (quoting *Arneson v. Bd. of Trs., McKendree Coll.*, 210 Ill. App. 3d 844, 850, 569 N.E.2d 252, 256 (1991)). "Illinois does not recognize a categorical rule about the impact of disclaimer language"—that is, language stating that a document is not a contract—"on an agreement." *Das v. Tata Consultancy Servs. Ltd.*, 118 F.4th 903, 910 (7th Cir. 2024). In some cases, a "disclaimer that the writing is not an express or implied contract . . . prevents the formation of a contract because 'there simply is no promise that an employee can reasonably interpret as an offer to be bound.'" *Id.* at 909 (quoting *Sutula-Johnson v. Off. Depot, Inc.*, 893 F.3d 967, 972 (7th Cir. 2018)). But a contract may be formed despite a disclaimer where other language makes definitive guarantees and assurances or where outside evidence supports

contract formation.  *See id.*; *Perman v. ArcVentures, Inc.*, 196 Ill. App. 3d 758, 765, 554 N.E.2d 982, 987 (1990).

The 2016 letter offered Waters the position of Truck Sales Consultant and provided a bullet point list of potential benefits and compensation, including a "30% commission on all vehicles sold."  Def.'s L.R. 56.1 Stmt., Ex. D.  The letter further stated:  "Please note that this is a job offer and compensation outline, not a contract of employment.  We will review this compensation plan periodically" to determine whether compensation is just considering changed economic conditions and performance, competitive with compensation at other dealerships, and equitable to TransChicago.  *Id.*  Illinois courts enforce contracts containing discretionary promises.  *Das*, 118 F.4th at 909–10.  But the letter lacks the definitive language that has led courts to conclude that a contract was formed despite a disclaimer, and Waters has not presented other evidence regarding contract formation.  *See Perman*, 196 Ill. App. at 765, 554 N.E.2d at 987.  The Court concludes that the 2016 offer letter was not a contract.

Waters is not entitled to any commission payments under the commission policy in effect at the time of his termination, specifically, the policy instituted in January 2024.  He concedes that he did not meet the requirements to earn the disputed commissions under that policy.  Waters says that he "fully procured and substantially performed on multiple truck sales prior to his termination" but says "that delivery or payment occurred post-termination[.]"  Pl.'s Consol. Resp. and Cross-Mot. ¶ 13.  TransChicago's evidence confirms that delivery and payment did not occur before Waters's termination on any of these sales, *see* Def.'s L.R. 56.1 Stmt., Exs. A & A-1, and Waters has cited no contrary evidence.  *See* Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶¶ 29–30.  Accordingly, there is no

genuine factual dispute on whether Waters' sales met the requirements for payment of commissions under the 2024 policy: under that policy, Waters earned no commissions on these vehicles because payment and delivery did not occur prior to his termination.

Waters contends that TransChicago inconsistently or selectively enforced its commission policies. In one case in this district, a court denied summary judgment on a similar claim where the employer announced a new commission structure but operated under the previous structure for almost a year and negotiated with an objecting employee. *Schoppert v. CCTC Int'l, Inc.*, 972 F. Supp. 444, 449 (N.D. Ill. 1997). But Waters and TransChicago did not negotiate over the policy at issue here, and Waters has not pointed to any evidence of inconsistent application of the 2024 policy or, more specifically, to evidence that any employees were paid a commission even though vehicle delivery or payment occurred after their employment with TransChicago ended. Waters's response cites no evidence to support this point, Pl.'s Consol. Resp. to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ¶ 14, and though his reply cites the Hedges declaration, nothing in that declaration supports his contention.[1] *See* Def.'s Mot. for Summ. J., Ex. A.

Waters also argues that he performed all the work possible on his end to secure the relevant orders before his termination but that invoicing and delivery did not take

---

[1] During Waters's (not Hedges's) deposition, Waters identified an employee who he says received a post-termination commission, but he has offered no evidence regarding the circumstances, including what commission policy was in effect at the time and whether that salesperson had agreed to an alternative commission payment plan. His failure to provide any support or rely on this point in his briefs and Local Rule 56.1 statements and responses amounts to forfeiture of the point.

place before his termination because the timing of those events was in TransChicago's hands.  See id., Ex. B, Waters Dep., at 29:4–29:9.  He contends that his superiors instructed him to continue obtaining orders for trucks even though they would not be delivered for months.  Id. at 31:16–31:18.  The delay in delivery was due to constraints imposed by the manufacturer, and Waters says he sold trucks believing he would be paid a commission when and payment occurred, even if that was after his termination.  Waters contends that it would be inequitable to allow TransChicago to deprive him of commission payments when he had done all he could to complete the sales and would have received a 15% commission under TransChicago's 2018 policy even if delivery and payment occurred after his termination.

In the absence of a contract, a court may award restitution or damages based on unjust enrichment, quantum meruit, or promissory estoppel.  Waters does not invoke these doctrines by name, but his argument sounds in promissory estoppel, and he relies on promissory estoppel caselaw.  See Camillo v. Wal-Mart Stores, Inc., 221 Ill. App. 3d 614, 622, 582 N.E.2d 729, 734 (1991) (awarding pro rata share of bonus under IWPCA to employee fired one month before the end of the fiscal year when policy required employment on last day of fiscal year to receive bonus).  The Court will address this theory of recovery even though Waters did not assert a claim of promissory estoppel, as such, in his complaint and has not asked to amend his complaint to assert such a claim.

To sustain a promissory estoppel claim, "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." Newton Tractor Sales, Inc. v. Kubota

8

*Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 523–24 (2009).  In this case, any claim of promissory estoppel founders primarily on the reliance element.

The only evidence the Court has been given regarding the orders on which Waters seeks commissions comes from TransChicago.  *See* Def.'s Mot. for Summ. J., Ex. A-1; Pl.'s Consol. Resp. to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ¶¶ 13–14 (referring to Def.'s Ex. A-1 as documentation of sales).  That evidence reflects that of the thirty-two orders potentially at issue in this case,[2] twenty-four were placed in February 2024, after TransChicago changed its commission policy and announced that to its salespeople, including Waters.  The previous policy provided for commissions on sales made pre-termination but paid for post-termination, but Waters cannot viably contend that he obtained these orders in reliance on that policy, as it had been superseded in January 2024.

The evidence from TransChicago reflects that the other eight orders were placed prior to its January 2024 revision of its commission policy, one in March 2022 and seven in October 2023.  But TransChicago's evidence—which, again, is the only evidence provided to the Court about the particulars of these purported sales—does not reflect that any of these eight had, by the time of the summary judgment motion, been "funded and delivered."  And Waters—whose arguments pertaining to a potential promissory estoppel argument are, at best, bare-bones—does not point to any evidence that he

---

[2] Although Waters's complaint refers to orders from Indiana Upfitters and Viking Civies Midwest, three of the thirty-two orders referenced in the evidence produced by TransChicago were from a different entity, Pyramid Equipment.  The Court will consider these nonetheless.

obtained any particular orders before the January 2024 commission policy change on which, under the previous policy, he would be entitled to a commission because delivery and payment actually happened but not until after his termination. For these reasons, any claim of promissory estoppel, even if Waters had asserted such a claim, fails.

Waters also invokes the procuring cause doctrine, under which "a party may be entitled to commissions on sales made after the termination of a contract [or agency relationship] if that party procured the sales through its activities prior to termination. The rule applies, however, only if the contract does not expressly provide when commissions will be paid." *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 567 (7th Cir. 1991) (quoting *Tech. Representatives, Inc. v. Richardson–Merrell, Inc.,* 107 Ill. App. 3d 830, 833, 438 N.E.2d 599, 602 (1982)). "The purpose of this rule is to protect a salesperson who is discharged prior to the culmination of a sale, but after he or she has done everything that is necessary to effect the sale." *Furth v. Inc. Pub. Corp.*, 823 F.2d 1178, 1180 (7th Cir. 1987). In this case, however, the commission policy in effect at the time Waters procured the orders in question *did* provide when commissions would be paid, and for any orders that he may have procured before that policy took effect, Waters has offered no evidence that the sales were completed. For these reasons, TransChicago is entitled to summary judgment on Waters's breach of contract claim as well as on any potential promissory estoppel claim.

C.     **Illinois Wage Payment and Collection Act**

Waters also alleges a violation of the IWPCA, 820 Ill. Comp. Stat. Ann. 115/1–20. Under the IWPCA, "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next

regularly scheduled payday for such employee." *Id.* 115/5. Final compensation includes "earned commissions." *Id.* 115/2.

The IWPCA does not create substantive rights. *See Enger v. Chi. Carriage Cab Corp*, 812 F.3d 565, 570 (7th Cir. 2016). Rather, "the IWPCA exists to hold the employer to his promise under the employment agreement."[3] *Id.* "An 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (2004).

The Court has concluded that Waters's 2016 offer letter was not a contract, and it is not genuinely disputed that he did not earn the commissions in question under TransChicago's commission policy in effect at the relevant time. Because Waters was not entitled to the disputed commissions under any agreement with TransChicago, his IWPCA claim fails.

## Conclusion

For the foregoing reasons, the Court grants TransChicago's motion for summary judgment [dkt. no. 29] and denies Waters' cross-motion for summary judgment [dkt. 32]. The Court directs the Clerk to enter judgment stating: Judgment is entered in favor of

---

[3] The Seventh Circuit's interpretation of "earned commission" under the IWPCA is bolstered by regulations of the Illinois Department of Labor. *See* 56 Ill. Adm. Code § 300.510 (defining earned commission under the IWPCA as commission "earned under the terms of the agreement or contract"). "Such regulations are given substantial weight and deference, as courts appreciate that agencies can make informed judgments upon issues that are related to their areas of experience and expertise." *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 544, 917 N.E.2d 1065, 1071 (2009).

11

defendant Patson, Inc., d/b/a TransChicago, and against Dustin Waters.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 19, 2025